IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DANA MCROBERTS,<br><br>Plaintiff<br><br>v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of the Social Security Administration,<br>Defendant | **REPORT AND RECOMMENDATION**<br><br>1:14-cv-0011-CW-EJF<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Dana Scott McRoberts filed this action asking the Court to reverse or remand the final agency decision partially denying Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 401–434, 1381–1383f. The Administrative Law Judge ("ALJ") determined that Mr. McRoberts did not qualify as disabled for the period of April 2, 2009 through August 15, 2011, within the meaning of the Social Security Act. (Admin. R. Doc. 16, certified copy tr. of R. of admin. proceedings: Dana Scott McRoberts (hereinafter "Tr. __").) The ALJ found Mr. McRoberts did qualify as disabled beginning August 16, 2011. (Tr. 29.) Having carefully considered the parties' memoranda and the complete record in this matter,[1] the undersigned RECOMMENDS the Court AFFIRM the Commissioner's decision.[2]

**PROCEDURAL HISTORY**

In July 2010, Mr. McRoberts filed for DIB and SSI alleging disability onset date of April 2, 2009. (Tr. 16.) The Regional Commissioner declined Mr. McRoberts's claims on September

---

[1] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will make its recommendation on the basis of the written memoranda.
[2] On February 20, 2014, District Judge Clark Waddoups referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.)

28, 2010, and again upon reconsideration on December 7, 2010. (*Id.*) At Mr. McRoberts's request a hearing before an ALJ took place on March 13, 2012 (the "Hearing"). (*Id.*) On May 7, 2012, the ALJ issued a decision (the "Decision") finding Mr. McRoberts disabled but only after August 16, 2011. (Tr. 12–29.) On June 12, 2012, Mr. McRoberts filed a request for review of the Decision, contesting the onset date determined by the ALJ. (Tr. 7.) Mr. McRoberts claims his disability began on April 2, 2009. (Pl.'s Br. 1, ECF No. 12.) The Appeals Council denied Mr. McRoberts's request on December 20, 2013, (tr. 1), making the ALJ's Decision the Commissioner's final decision for the purposes of judicial review under 42 U.S.C. § 405(g) and 1383(c)(3). *See* 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481.

## FACTUAL BACKGROUND

Mr. McRoberts, born April 13, 1953, (tr. 223), alleges his back, heart, and mental illnesses rendered him disabled from April 2, 2009, not just after August 15, 2011. (*See* Pl.'s Br. 1; ECF No. 12.)

Mr. McRoberts visited the Davis Hospital emergency room ("ER") on April 9, 2009—his alleged disability onset date. After receiving tests given to determine the source of the "severe pain to left side of chest," he insisted on being discharged despite hospital staff's recommendation he remain for observation. (Tr. 541, 543.) Seven days later, Mr. McRoberts complained of chest pain and returned to the ER. (Tr. 527.) The treating physician recommended Mr. McRoberts remain in the hospital and scheduled a stress test for the following morning. (Tr. 529.) Mr. McRoberts declined hospital admission and left with instructions to return immediately to the ER if his symptoms worsened. (*Id.*) No record of the recommended stress test appears in the record. On June 25, 2009, Mr. McRoberts again reported to the ER with

chest pain and again refused admission, leaving with instructions to return if his pain increased or he experienced numbness or weakness. (Tr. 513–524.)

On July 16, 2009, Mr. McRoberts experienced shortness of breath and chest pains and returned to the ER. (Tr. 503.) After tests showed "severe coronary artery disease," (tr. 507), Mr. McRoberts underwent emergency heart surgery. (Tr. 404–405 (describing myocardial revascularization).) Mr. McRoberts's discharge diagnosis indicated his status as post myocardial revascularization. (Tr. 339.) During a follow-up appointment, Dr. Humiston, Mr. McRoberts's cardiologist, noted "[f]rom a cardiovascular standpoint, the patient did quite well." (Tr. 586–587.)

Prior to this incident, Mr. McRoberts had benign paroxysmal vertigo, (tr. 421), depression, for which he took Wellbutrin, (tr. 423), and lumbar pain, for which he took Norco, (tr. 427–29, 434). Mr. McRoberts attributes his back pain to a fall he had in the early 1980s. (Tr. 75.) Dr. Allred reviewed an MRI in March of 2006 and found Mr. McRoberts had some degenerative changes but an "otherwise normal" back. (Tr. 426.)

In November 2009, Mr. McRoberts reported to Dr. Allred, his treating physician, that while he experienced no chest pain or palpitations, his depression fluctuated. (Tr. 449.) Mr. McRoberts admitted not taking his prescribed anti-depression medication at that time. (*Id*.)

In May 2010, Mr. McRoberts reported chest pain to Dr. Humiston, his cardiologist; however, the resulting echocardiogram revealed no abnormalities. (Tr. 580–81.)

When Mr. McRoberts returned to the ER with chest pain in June 2010, the treating physician diagnosed "acute chest pain of uncertain etiology." (Tr. 498–99.) Dr. Allred believed anxiety might have caused Mr. McRoberts's cardiologic symptoms. (Tr. 454–55.) Tests done at that time showed "evidence of mild to moderate ischemia in the Mid Anterior, Mid Anteroseptal,

Apical Anterior and Apical regions … [normal] ventricular systolic function … [w]all motion abnormality consistent with prior myocardial injury or severe ischemia … [and] [n]o chest pain with stress." (Tr. 584–85.) Mr. McRoberts had a stent placed in his coronary artery in July 2010. (Tr. 490–94.) Although Mr. McRoberts continued to complain of chest pain, follow-up examinations in August and September 2010 revealed no abnormal heart conditions. (Tr. 576–577, 628–629.)

As part of the application for DIB and SSI, Louis M. Zuniga, M.D., a state agency physician, reviewed Mr. McRoberts's records and asserted in a checkbox-style report that Mr. McRoberts has a light residual functional capacity ("RFC") and that he suffers from some postural and environmental limitations. (Tr. 648–655.) David O. Peterson, M.D., another state agency physician, agreed with Dr. Zuniga's assessment after reviewing Mr. McRoberts's records. (Tr. 656.)

In September 2010 state agency psychologist Richard Waranch, Ph.D., reviewed Mr. McRoberts's medical record and found no medically determinable mental impairment given Mr. McRoberts's records showed no indication his depression interfered with his activities of daily living. (Tr. 632.) Dr. Waranch asserted that Mr. McRoberts's allegation of depression lacked support. (*Id.*)

On August 16, 2011, the University of Utah admitted Mr. McRoberts and soon diagnosed him with a left middle cerebral artery ischemic stroke and dyslipidemia. (Tr. 709.) Although the patient name on the discharge summary is listed as "Guitar Stroke," Mr. McRoberts testified the records reflect his treatment at the ER. (*See* tr. 39–44.) The ALJ determined that this date, August 16, 2011, reflects the onset of Mr. McRoberts's disability.

At the Hearing, Mr. McRoberts testified his heart problems prevent him from working, inhibit his breathing, and reduce his stamina. (Tr. 61.) Specifically, Mr. McRoberts resigned his job because of his chest pain in April 2009. (Tr. 55–56.) He added that back pain prevents him from lifting objects but admitted he could simultaneously lift two one-gallon jugs of milk. (Tr. 65.) Mr. McRoberts testified he can stand for 30 consecutive minutes, (tr. 67), and lift 25 pounds, (tr. 75). Depression, Mr. McRoberts testified, limits his ability to work by robbing him of motivation. (Tr. 65 ("Well, there's just days that I just don't want to get up. I just—I just lay in bed . . . .").) During the Hearing, Mr. McRoberts testified he only takes his prescribed Wellbutrin "when [he has] money to pay for it." (Tr. 63.) When asked about the frequency of depression-related problems, however, Mr. McRoberts stated "[i]t doesn't happen very much" because of his Wellbutrin prescription. (Tr. 65.) Almost all of Mr. McRoberts's testimony at the hearing related to his abilities post August 15, 2011.

## STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly

contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[3] The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax,* 489 F.3d at 1084 (internal quotation marks and citations omitted).  The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-step sequential evaluation.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Mr. McRoberts's claim through step five, making the following findings of fact and conclusions of law with respect to Mr. McRoberts:

1. "[Mr. McRoberts] meets the insured status requirements of the Social Security Act through June 30, 2014." (Tr. 18.)
2. "[Mr. McRoberts] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq*.)." (*Id.*)
3. "Since the alleged onset date of disability, April 2, 2009, [Mr. McRoberts] has had the following severe impairment: coronary artery disease, status post CABG. Beginning on the established onset date of disability, August 16, 2011, [Mr. McRoberts] has had the following severe impairments: cognitive disorders status post CVA, coronary artery disease and status post CABG (20 CFR 404.1520(c) and 416.920(c))." (*Id.*)
4. "Since the alleged onset date of disability, April 2, 2009, [Mr. McRoberts] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 19.)
5. "After careful consideration of the entire record, the undersigned finds that, prior to August 16, 2011, the date [Mr. McRoberts] became disabled, [Mr. McRoberts] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. The claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. He could sit 6 of 8 hours. He could stand 6 of 8 hours. His ability to push/pull was unlimited except by lifting limits. He could occasionally climb ramps, stairs, ladders, ropes and scaffolds. He could frequently balance, stoop, kneel, crouch and crawl. He had no manipulative, visual or communicative limitations. He must avoid concentrated exposure to extreme cold and heat, respiratory irritants and unprotected heights and hazards." (Tr. 19–20.)
6. "After careful consideration of the entire record, the undersigned finds that, beginning on August 16, 2011, [Mr. McRoberts] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

   416.967(b) except for the following limitations. [Mr. McRoberts] can lift/carry 20 pounds occasionally and 10 pounds frequently. He can sit 6 of 8 hours. He can stand 6 of 8 hours. He must be able to sit and stand at will. He can sit for 40 minutes and stand for 30 minutes. His ability to push/pull is unlimited except by lifting limits. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds. He can frequently balance, stoop, kneel, crouch and crawl. He has no manipulative, visual or communicative limitations. He must avoid concentrated exposure to extreme cold and heat, respiratory irritants and unprotected heights and hazards. He is expected to be off task more than 10% of the time secondary to decreased attention and concentration." (Tr. 27.)
7. "Prior to August 16, 2011, [Mr. McRoberts] was capable of performing past relevant work as a [sic] automobile salesperson, burial needs salesperson, locksmith and security consultant. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)." (Tr. 28.)
8. "Beginning on August 16, 2011, [Mr. McRoberts's] residual functional capacity has prevented [Mr. McRoberts] from being able to perform past relevant work (20 CFR 404.1565 and 416.965)." (*Id.*)
9. "[Mr. McRoberts] was an individual of advanced age on August 16, 2011, the established disability onset date (20 CFR 404.1563 and 416.963)." (*Id.*)
10. "[Mr. McRoberts] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)." (*Id.*)
11. "[Mr. McRoberts] does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968)." (*Id.*)
12. "Since August 16, 2011, considering [Mr. McRoberts's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Mr. McRoberts] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966)." (Id.)
13. "[Mr. McRoberts] was not disabled prior to August 16, 2011, (20 CFR 404.1520(f) and 416.920(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." (Tr. 29.)

In short, the ALJ concluded that before August 16, 2011, Mr. McRoberts did not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that he had the RFC to perform his past relevant work. The ALJ also determined a stroke on August 16, 2011 rendered Mr. McRoberts unable to perform a job that exists in significant numbers in the national economy, causing him to qualify as disabled. In particular, following Mr. McRoberts's stroke, his RFC

9

changed to require he have a sit/stand option at work; he can sit for a maximum of forty minutes and stand for a maximum of thirty minutes at a time; and he would "be off task" more than ten percent of the time. (*Cf.* tr. 19–20 *with* tr. 27.)

In support of his claim that the Commissioner erred by declining to accept Mr. McRoberts's alleged April 2, 2009 onset date, Ms. McRoberts raises four points of error:[4] the ALJ's refusal to find some of Mr. McRoberts's impairments severe at step two, the evaluation of Mr. McRoberts's credibility, the RFC determination, and the evaluation of Mr. McRoberts's ability to perform past relevant work. Because Mr. McRoberts challenges the ALJ's determination of his disability onset date, the Court need only evaluate the ALJ's findings regarding the period between April 2, 2009 and August 15, 2011.

## I. Rejection of Impairment at Step Two

Mr. McRoberts argues the ALJ erred by finding Mr. McRoberts's spinal stenosis, osteoarthritis, and chronic lower back pain do not constitute severe impairments. (Pl.'s Br. 10; ECF No. 12.) The Court disagrees.

The ALJ rejected Mr. McRoberts's claim that the spinal stenosis, osteoarthritis, and chronic low back pain experienced between April 2, 2009 and August 15, 2011 qualified as "severe." (Tr. 19.) The ALJ noted that "diagnostic imaging shows no physical basis for the complaints" and that Mr. McRoberts continued to work while troubled by these impairments. (Tr. 19.)

---

[4] By addressing only these points of alleged error in his opening brief, Mr. McRoberts waived any additional challenges to the ALJ's decision. *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (failing to raise appeal issues in opening brief waives those points because doing so deprives the opponent of the opportunity to address the arguments).

Step two of the sequential evaluation process requires the ALJ to decide whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments qualifies as severe when it significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). At step four the ALJ determines the claimant's RFC by considering all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1520(a)(iv); 20 C.F.R. § 404.1545(a)(2). Because the ALJ considers both severe and non-severe impairments at later steps, any failure to designate additional severe impairments at step two qualifies as harmless if the ALJ finds at least one severe impairment and continues with the sequential evaluation process. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008).

Here, the ALJ found at step two of the sequential evaluation process that Mr. McRoberts had the following severe impairment beginning April 2, 2009: "coronary artery disease, status post CABG [coronary artery bypass grafting]." (Tr. 18.) Having found that Mr. McRoberts possessed that severe impairment beginning April 2, 2009, the ALJ continued with the sequential evaluation process. (Tr. 19–29.) In determining Mr. McRoberts's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p" in addition to "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 20.)

Specifically, the ALJ considered Mr. McRoberts's description of his back injury, explaining Mr. McRoberts "was installing an alarm system and fell through a ceiling. He landed

11

on a coffee table." (Tr. 22.) The ALJ noted that Mr. McRoberts reported his back problems had improved some since he came to Utah. (*Id.*) The ALJ also discussed the medical treatment for Mr. McRoberts's back pain extensively, detailing all treatments between January 2006 and July 2010. (Tr. 24–26.)

The ALJ also considered Dr. Zuniga's, a state agency physician's, opinion in assessing Mr. McRoberts's RFC. (Tr. 27.) Significantly, at the time of Dr. Zuniga's review, September 27, 2010, (tr. 647–55), Mr. McRoberts did not identify his back pain as one of his "illnesses, injuries, or conditions." (*See* tr. 224 (Appl. for SSI, Aug. 2, 2010); tr. 257 (Appl. for DIB, Aug. 2, 2010).) Mr. McRoberts identified only heart disease, asthma, and depression as the basis for his applications. (*Id.*)

The ALJ's decision shows he did consider Mr. McRoberts's back complaints when making his RFC assessment. Because the ALJ found severe impairments at step two and continued the sequential evaluation process wherein he considered the back pain, the undersigned RECOMMENDS the District Court find any error at step two remains harmless.

## II. Evaluation of Mr. McRoberts's Credibility

Mr. McRoberts next argues the ALJ failed to apply the correct legal standard in evaluating Mr. McRoberts's testimony. (Pl.'s Br. 11–12; ECF No. 12.). Specifically, Mr. McRoberts claims the ALJ "[f]ail[ed] to connect the evidence to credibility" as required by *Kepler v Chater,* 68 F.3d 387, 391 (10th Cir. 1995). *Id*. The Court disagrees.

"'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler*, 68 F.3d at 391 (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions. *Id.* To do this, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted). But this analysis "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found Mr. McRoberts's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Mr. McRoberts's] statements concerning the intensity, persistence and limiting effects of these systems are not credible prior to August 16, 2011, to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 23.) The ALJ linked this finding with specific evidence. (*See* tr. 23–26.)

The ALJ described objective medical evidence contradicting each of Mr. McRoberts's subjective complaints. For instance, the ALJ acknowledged Mr. McRoberts "testified he has suffered with back pain since falling through a ceiling in the 1980's. However, diagnostic tests fail to show a physical basis for his complaints and examinations fail to show significant limitations." (Tr. 24–25.) The ALJ went on to describe a series of physical evaluations finding no physical manifestation of the pain Mr. McRoberts reports. The ALJ specifically discusses,

13

among other information, Dr. Allred's January 2006 evaluation, the April 2006 X-ray results, the May 2006 administration of an epidural injection, Dr. Allred's August 2007 examination of Mr. McRoberts's acute flare of chronic back pain, and physical examinations in May and July 2010. (Tr. 25–26.) The ALJ also reviewed Mr. McRoberts's work history and daily activities, finding them inconsistent with claims of persistent debilitating back pain. (Tr. 19–26.) For instance, the ALJ determined Mr. McRoberts experienced no restriction of activities of daily living; despite his back pain Mr. McRoberts could clean and vacuum, cook his own meals, and do his own grocery shopping. (Tr. 22.)

      The ALJ also relied on substantial evidence in finding medication controls Mr. McRoberts's back pain. (Tr. 25 ("On the other hand, since the records show he has been prescribed Norco consistently for this condition without significant dosage increases, it appears that medication controls the condition.").) The ALJ described at least nine instances where Dr. Allred monitored or adjusted Mr. McRoberts's medication levels. (Tr. 25–26.) The ALJ also notes an injury Mr. McRoberts suffered from a golf club in July 2010. (Tr. 26.) The ALJ linked his rejection of Mr. McRoberts's subjective complaints about back pain with medical evidence in the record to conclude that the claimant's subjective back pain complaints lacked credibility. (Tr. 23–26; *see Kepler*, 68 F.3d at 391 (requiring the ALJ to "closely and affirmatively lin[k] credibility findings] to substantial evidence…").)

      The ALJ also closely linked his rejection of Mr. McRoberts's subjective complaints regarding heart problems with substantial evidence. Although Mr. McRoberts testified he finds himself "out of breath all the time [and with] no stamina or get up and go," the ALJ found the symptoms not disabling. (Tr. 61, 23-24.) The Decision links that finding to medical records. (Tr. 23–24.) For instance, the ALJ reviews Mr. McRoberts's apparently successful recovery

14

from emergency myocardial revascularization. (Tr. 23, 23–24.) The Decision specifically discusses Mr. McRoberts's follow up appointments, whose records describe "wounds … healing well," "a good result from surgery," and "a CT scan [showing] no significant worrisome pathology." (Tr. 23–24.) The ALJ set forth the required link between his credibility determination and Mr. McRoberts's claims regarding his heart condition.

The Decision also describes why the ALJ found Mr. McRoberts's claims regarding the limiting effects of depression not credible. In support of his conclusion that "the record shows [Mr. McRoberts's] depression can be controlled with medications," the ALJ notes Mr. McRoberts "reported to Dr. Allred that he was doing very well on Wellbutrin with remission of his symptoms." (Tr. 26.) The Decision also details Mr. McRoberts's testimony that his depression does not affect his ability to work when he takes Wellbutrin. (Tr. 21.) Taken together, the ALJ determined the medical evidence and Mr. McRoberts's employment history contradict Mr. McRoberts's claims of disabling depression. (Tr. 23, 26.) The ALJ established the link *Kepler* requires. *See Kepler*, 68 F.3d at 391 (requiring the ALJ to "closely and affirmatively lin[k credibility findings] to substantial evidence…").

For the reasons set forth above, the undersigned RECOMMENDS the District Court find the ALJ correctly applied the legal standard when evaluating Mr. McRoberts's credibility.

### III.     RFC Determination

A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. The step four analysis involves three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job

15

demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted). In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe." *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In phase one, the ALJ determined Mr. McRoberts's RFC, stating, prior to August 16, 2011:

> [Mr. McRoberts] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. The claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. He could sit 6 of 8 hours. He could stand 6 of 8 hours. His ability to push/pull was unlimited except by lifting limits. He could occasionally climb ramps, stairs, ladders, ropes and scaffolds. He could frequently balance, stoop, kneel, crouch and crawl. He had no manipulative, visual or communicative limitations. He must avoid concentrated exposure to extreme cold and heat, respiratory irritants and unprotected heights and hazards.

(Tr. 19–20.)

Mr. McRoberts argues the ALJ erred at phase one, saying the Decision provides "no reasoning and no citation of specific facts." (Pl.'s Br. 12–13, ECF No. 12.) The Court disagrees. In finding Mr. McRoberts capable of performing light work subject to certain listed limitations, the ALJ extensively reviewed Mr. McRoberts's testimony and medical records. (Tr. 20–27.) The Court has already addressed the comprehensiveness of the ALJ's reasoning in addressing Mr. McRoberts's claim of error in the credibility determination. The ALJ specifically describes much of Mr. McRoberts's medical history and goes on to explain why he accepted or rejected various assertions about Mr. McRoberts's RFC. (Tr. 20–27.)

Mr. McRoberts decries the ALJ's failure to consider the impact of both his severe and non-severe impairments on his ability to work, and the ALJ's "fail[ure] to consider all of Mr.

McRoberts' impairments when assessing his residual functional capacity." (Pl.'s Br. 13, ECF No. 12.) The ALJ specifically stated that "[i]n making this finding, the [ALJ] has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," which he follows with extensive discussion of Mr. McRoberts's various ailments according to his own testimony and his medical records. (Tr. 20.) That discussion includes, as required, a detailed analysis of Mr. McRoberts's back problems, despite the ALJ's earlier classification of them as non-severe impairments. (Tr. 24–26; *see* tr. 18.) The RFC assessment also discusses Mr. McRoberts's heart and mental health impairments. (Tr. 23–24; 26–27.) The ALJ's RFC analysis complies with the requirement to consider both severe and non-severe impairments on the ability to work. *See* SSR 96-8P, 1996 WL 374184, \*5 (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'") During this discussion, the ALJ explains what evidence he credits and discredits and why. (Tr. 20–27.)

Mr. McRoberts also faults the ALJ for omitting a discussion of rejected probative evidence. (Pl.'s Br. 13, ECF No. 12.) Mr. McRoberts does not provide any particular examples of unexplained omissions, and the Court cannot find any. To the contrary, the ALJ discusses why he rejected some aspects of Mr. McRoberts's subjective testimony. (*See supra*, Part II of this Report and Recommendation.) The Court cannot find other "probative evidence [the ALJ] rejected." (Pl.'s Br. 13, ECF No. 12.) The ALJ need not cite every item in the administrative record; the Decision makes clear the ALJ reviewed and considered the relevant material. *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("There is obviously no requirement that the ALJ reference everything in the administrative record.") (citation omitted); *see also Doyal v.*

17

*Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("the form of words should not obscure the substance of what the ALJ actually did.").

In finding Mr. McRoberts capable of light work, the ALJ applied the proper legal standard and supported his conclusion with substantial evidence from both the medical record and Mr. McRoberts's testimony.  Accordingly, the undersigned RECOMMENDS the District Court find the ALJ applied the proper legal standards and substantial evidence supports the ALJ's determination of Mr. McRoberts's RFC.

### IV.  Mr. McRoberts's Ability to Perform Past Relevant Work

Phase two of step four requires the ALJ to "determine the physical and mental demands of the claimant's past relevant work."  *Doyal*, 331 F.3d at 760.  In step four's final phase, the ALJ must determine whether the claimant can return to his past relevant work despite the RFC limitations established in phase one.  *Id*.  The claimant bears the burden of proving he cannot perform past relevant work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  Mr. McRoberts asserts the ALJ improperly addressed phases two and three and "improperly determined that Mr. McRoberts could return to his past relevant work."  (Pl.'s Br. 14, ECF No. 12.)  The Court disagrees.

Mr. McRoberts argues the ALJ made "no specific findings on the nature of Mr. McRoberts' past work."  (*Id.* at 14.)  However, the Decision explicitly reviews the vocational expert's testimony evaluating the exertional requirements of Mr. McRoberts's previous employment, finding some positions to constitute medium skilled work and others as light skilled work. (Tr. 28.)  Nothing in the ALJ's decision suggests he disagreed or had a basis to disagree with the vocational expert's testimony.

Mr. McRoberts also claims neither the ALJ nor Mr. McRoberts's representative ever asked about the nature of Mr. McRoberts's work. (Pl.'s Br. 14, ECF No. 12.) However, prior to the vocational expert testifying, Mr. McRoberts did testify about the nature of his past work. (Tr. 55–57.) Based on that testimony and the *Dictionary of Occupational Titles*, the vocational expert described Mr. McRoberts's experience as a security consultant, automobile salesperson, burial needs salesperson, and locksmith as "light, skilled work." (Tr. 28, 82, 85.) The vocational expert further noted a person able to do light work, with some exceptions could perform these jobs. (Tr. 83–85.) The vocational expert did reduce the number of locksmith and security consultant jobs available in the economy by ten percent to allow for the RFC limitations beyond mere light, skilled work. (Tr. 28, 84–85.) After describing the vocational expert's testimony, the ALJ found that Mr. McRoberts could perform his past light skilled work as actually performed. (Tr. 28.)

The ALJ's approach complies with the method approved by the Tenth Circuit in *Doyal*. 331 F.3d at 760. Accordingly, the undersigned RECOMMENDS the District Court find the ALJ applied the proper legal standards and cited substantial record evidence regarding Mr. McRoberts's ability to perform past relevant work.

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the District Court AFFIRM the Commissioner's decision.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of

service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 27th Day of February 2015.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge